61 P.3d 606

**Edgar J. STEELE, Plaintiff–Appellant,**

v.

**The SPOKESMAN–REVIEW, Cowles Publishing Company, William Stacey Cowles, Bill Morlin, Chris Peck and Does 1–100, Defendants–Respondents.**

No. 27174.

Supreme Court of Idaho.
Coeur d'Alene, September 2002.

Dec. 31, 2002.

Edgar J. Steele, Sandpoint, pro se appellant, argued.

Witherspoon, Kelley, Davenport & Toole, P.S., Coeur d'Alene, for respondents. Duane M. Swinton argued.

WALTERS, Justice.

This is an action claiming damages for defamation, invasion of privacy, and intentional infliction of emotional distress against the Spokesman–Review newspaper for purportedly libelous statements and innuendo contained in an article reporting on Edgar Steele's decision to represent the Aryan Nations in the Kootenai County District Court case of *Keenan v. Aryan Nations.* Because of the truth of the statements complained of by Steele, we affirm the district court's dismissal of the claims in the action.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 1999, Edgar Steele filed a notice of substitution of counsel to represent several of the defendants in *Keenan v. Aryan Nations,* an action in the Kootenai County District Court arising out of an assault alleg-

edly carried out by three Aryan security guards near the Aryans' North Idaho compound in 1998. The Spokesman–Review published an article on July 23, 1999, that identified Steele as the new attorney in the suit for damages, which had been filed by the Southern Poverty Law Center on behalf of the victims of the assault, Victoria Keenan and her nineteen-year-old son, Jason Keenan.

Bill Morlin of the Spokesman–Review reported in the article that the Aryans' legal defense fund was using the same post office box at Sagle, Idaho, that had been used the previous year by the Bonner County Taxpayers Coalition. The article stated that the taxpayer group had published a newsletter that was mailed to residents of Bonner and Kootenai counties shortly after an anti-Semitic mailing by the 11th Hour Remnant Messenger, a white supremacist group founded by Carl E. Story and Vince Bertollini. The article further stated that it was unclear who had funded the newsletter. Finally, the article reported that Story, Bertollini, and Steele had moved to Idaho from California at about the same time; that Story and Bertollini had ties to Richard Butler and the Aryan Nations; and that Steele was acquainted with the two men. According to Steele, the statements contained in the article were untrue or falsely depicted him as a white supremacist by insinuation and innuendo; and his efforts to obtain a retraction from the Spokesman–Review were rebuffed.

Steele filed this action against the Spokesman–Review and three named employees of the newspaper on August 25, 1999, asserting defamation, invasion of privacy and intentional infliction of emotional distress. On March 7, 2000, the Spokesman–Review moved the district court for summary judgment on all of the plaintiff's claims. The defendants argued that plaintiff, who is a public figure for purposes of this action, cannot meet his heavy burden of proving by clear and convincing evidence that the Spokesman–Review article was published with actual malice, i.e., with knowledge of falsity or reckless disregard as to the truth of what was published.

The district court delayed the summary judgment hearing upon Steele's motion to suspend activity in consideration of his role as defense counsel in the upcoming trial in *Keenan v. Aryan Nations*. On December 6, 2000, the district court ruled on the summary judgment motion and issued its order granting the defendants a dismissal of the action.

Steele filed a timely appeal. He challenges the district court's conclusions that no genuine issues of material fact sufficient to overcome summary judgment were shown on his claims of defamation, invasion of privacy, and intentional infliction of emotional distress.

## STANDARD OF REVIEW

Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion. *Friel v. Boise City Housing Authority*, 126 Idaho 484, 887 P.2d 29 (1994). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court on review liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994). If the evidence reveals no disputed issues of material fact, the trial court should grant summary judgment. *Doe v. Durtschi*, 110 Idaho 466, 470, 716 P.2d 1238, 1242 (1986).

Whether summary judgment should be granted when First Amendment rights are involved is determined in the same manner as in all other cases in which it is claimed that a case should not go to the jury. *Bandelin v. Pietsch*, 98 Idaho 337, 339, 563 P.2d 395, 397 (1977). The trial court's sole inquiry is to ascertain whether issues of material fact exist, but the standard against which the evidence must be examined is that of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *See id.* On a summary judgment motion in a defama-

tion action in which the *New York Times* standard applies, therefore, the plaintiff is not only required to produce evidence creating a genuine issue of material fact, but is additionally required to produce evidence that a jury could find is clear and convincing evidence that the defendant acted with knowledge that the statements were false, or with reckless disregard for the statements' truth or falsity. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–53, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Wiemer v. Rankin*, 117 Idaho 566, 569–70, 790 P.2d 347, 350–52 (1990).

## DISCUSSION

■■■ In ruling on the summary judgment motion, the district court determined that Steele had voluntarily injected himself into two separate public controversies: (1) the free-speech rights of the white supremacist hate groups such as the Aryan Nations and (2) the administration of the governmental affairs of Bonner County. The district court then concluded that Steele was a limited-purpose public figure, which triggered the application of the *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) standard. Under *New York Times*, a plaintiff is required to prove that an allegedly libelous statement was made with "actual malice," *i.e.*, with knowledge that the statement made was false or was made with reckless disregard of whether the statement was false or not.

■■■ Although the district court held that Steele did not meet his burden to show actual malice, summary judgment in favor of the Spokesman–Review can be sustained on a ground other than one that requires this Court to determine Steele's status as a public figure or as a private individual. "[W]here allegedly defamatory speech is of public concern, the First Amendment requires that the plaintiff, whether public official, public figure, or private individual, prove the statements at issue to be false." *Philadelphia Newspa-*

*pers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) (Brennan, J., concurring).[1] Clearly, the article about Steele taking over the representation of the Aryan Nations in *Keenan v. Aryan Nations* was a matter of public concern that had generated substantial public debate. Indeed, Steele himself had asserted that the suit involved significant and history-making issues of public concern that would have far-reaching implications.

■ The constitutional question the district court considered in the framework of the summary judgment motion was whether the evidence sufficed to show that the Spokesman–Review acted with the requisite knowledge of falsity or reckless disregard as to truth or falsity. To that end, the district court examined each of the allegedly defamatory statements in turn. Relying on the testimony from Bill Morlin (the reporter) that the Aryan Nations' Internet web site requested contributions to the legal defense fund be mailed to Post Office Box 1255, Sagle, Idaho, the district court confirmed that the post office box had been the same one previously used by the Bonner County Taxpayers Coalition, as stated in the article. Linkage of the two organizations to Box 1255 was a true statement. With respect to the statement concerning the Bonner Examiner newsletter, the uncontradicted evidence showed that a mass mailing of the newsletter to residents of Bonner and Kootenai counties occurred within one month of a mass mailing of anti-Semitic propaganda in those same counties. Further, the district court accepted unrefuted affidavits submitted by the defendants showing that the source of funding of the Bonner Examiner was not readily available to Morlin when he conducted his research for the article.

■■■ Finally, the district court determined that the statement that Steele had relocated from California to Idaho at "about the same time" as Carl Story and Vincent Bertollini was not a material deviation from

---

**1.** The Supreme Court rejected the common-law presumption that defamatory speech is false when a plaintiff seeks damages against a media defendant for speech of public concern, and announced a rule requiring the plaintiff to bear the burden of proof of falsity, in order to ensure that true speech on matters of public concern is not deterred in violation of the U.S. Constitution. *Id.* at 776–77, 106 S.Ct. 1558.

the truth even though two years separated their moves. It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance. Restatement (Second) of Torts § 581A, comment f (1977). In Idaho, the Court has adopted this rule and added that "so long as the substance, the gist, the sting of the allegedly libelous charge be justified," minor inaccuracies do not amount to falsity. *Baker v. Burlington Northern, Inc.*, 99 Idaho 688, 690, 587 P.2d 829, 831 (1978). *Accord Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). Thus, because of the truth of the contested statements, Steele has failed to make a *prima facie* case of defamation. Summary judgment of the defamation claim was properly granted.

 Steele has also failed to make a *prima facie* case on his claims of invasion of privacy. One of the elements of invasion of privacy by false light requires some "public disclosure of falsity or fiction concerning the plaintiff." *Hoskins v. Howard*, 132 Idaho 311, 316, 971 P.2d 1135, 1140 (1998). Where the publication is free from material falsehood, recovery under this cause of action may not be had. *Id.* Moreover, Steele's assertion that the article attempts to show that he shares the beliefs of the Aryans or the founders of the 11th Hour Remnant Messenger is insufficient to support his false light invasion of privacy claim. The two remaining invasion of privacy claims require "the invasion of something secret, secluded or private pertaining to the plaintiff." *Peterson v. Idaho First Nat'l Bank*, 83 Idaho 578, 584, 367 P.2d 284 (1961), *quoting* Privacy, William L. Prosser, 48 Cal. Law Review 383, at 407 (1960). Thus, to establish a claim for public disclosure of private facts or intrusion into solitude or seclusion, the areas intruded upon must be, and are entitled to be, private. *Hoskins v. Howard*, 132 Idaho 311, 971 P.2d 1135 (1998). As found by the district court,

the facts disclosed in the article, including the post office box used by Steele for purposes of the Bonner County Taxpayer Coalition and the Aryan Nations' legal defense fund, the relocation of Steele from California to Idaho and that he is a licensed Idaho attorney, are not private facts; they were readily available from public sources. Accordingly, the district court correctly rendered summary judgment on the invasion of privacy claims.

 Lastly, we review the district court's award of summary judgment on Steele's claim of intentional infliction of emotional distress. The basis for the district court's ruling on this claim does not lie in the plaintiff's failure to establish a genuine issue of material fact with respect to any of the three elements of the claim.[2] Rather, the district court held that Steele, who is claiming intentional infliction of emotional distress by reason of a publication, failed to prove an additional element required of a "public figure." A public figure plaintiff may not recover without showing, in addition, that the publication contains a false statement of fact which was made with "actual malice, *i.e.*, with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Hustler Magazine v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). Because we have upheld the district court's finding in the defamation claim of a complete failure of proof that the Spokesman–Review published the article with knowledge that the statement was false or with reckless disregard as to whether or not it was true, we conclude that summary judgment on the claim of intentional infliction of emotional distress was properly granted.

Summary judgment in favor of the Spokesman–Review is hereby affirmed. Because we are not left with the abiding belief that the appeal was brought and pursued frivolously, unreasonably and without foundation we award no attorney fees on appeal. *Minich v. Gem State Developers, Inc.*, 99 Idaho

---

**2.** A claim of intentional infliction of emotional distress requires proof of the following elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe.
*Evans v. Twin Falls County*, 118 Idaho 210, 220, 796 P.2d 87, 97 (1990).

911, 591 P.2d 1078 (1979) Costs on appeal are awarded to the Respondents.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, CONCUR.