**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 39364**

| | | |
|---|---|---|
| TREVOR TAFT, a minor, and DAVID and WENDY TAFT, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Pocatello, August 2013 Term |
| JUMBO FOODS, INC., | ) ) | 2013 Opinion No. 121 |
| Defendant-Respondent, | ) ) | Filed: November 26, 2013 |
| and | ) ) | Stephen W. Kenyon, Clerk |
| DEREK B. GUMMERSALL, a minor, CLAY and JULIE GUMMERSALL, husband and wife, | ) ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Oneida County. Hon. Robert C. Naftz, District Judge.

The judgment of the district court is <u>affirmed</u>, in part, and <u>vacated</u>, in part, and the case is <u>remanded</u>.

May, Rammell & Thomas, Chtd., Pocatello, for appellants. Bron Rammell argued.

Cooper & Larsen, Pocatello, for respondent. Gary L. Cooper argued.

_____

J. JONES, Justice.

This appeal arises from litigation involving a motor vehicle accident in Oneida County. Passenger Trevor Taft was injured when driver Derek Gummersall, the son of Clay Gummersall, lost control of a 1988 Ford Ranger. At the time of the accident, Clay was an employee of Jumbo Foods, Inc., in whose name the vehicle was titled. David, Wendy, and Trevor Taft ("the Tafts") sued Jumbo Foods under theories of negligent entrustment and imputed negligence, arguing that Jumbo Foods owned the Ranger, and thus had a right to control it. Jumbo Foods countered that it sold the Ranger to Clay Gummersall before the accident occurred, and thus could not be held

1

liable. The district court granted summary judgment in favor of Jumbo Foods and the Tafts timely appealed. We affirm in part, vacate in part, and remand.

## I.
## FACTUAL AND PROCEDURAL HISTORY

On July 6, 2008, Derek Gummersall, the minor son of Clay and Julie Gummersall, lost control of the vehicle he was driving, a 1998 Ford Ranger pickup truck, while traveling through Oneida County, Idaho. Derek's passenger, Appellant Trevor Taft, was severely injured as a result. Trevor and his parents commenced this lawsuit to recover damages from Derek, Clay, and Julie Gummersall, as well as from Clay's employer, Jumbo Foods. The Ranger had been used by Clay as a company vehicle for his employment as a sales person for Jumbo Foods.

Sometime in June 2008, Clay began having discussions with Don Hartzell, the operations manager of Jumbo Foods, about purchasing the Ranger. Clay testified that on July 1, 2008, he prepared a handwritten agreement, which indicated that Jumbo Foods was "selling" him the Ranger for $5,000. Hartzell stated that he authorized Clay to sign the document on his behalf. Clay used this document to obtain insurance on the vehicle. Jenifer Wiscombe, an agent for American Family Mutual Insurance Company, testified that Clay applied for insurance on the Ranger "as of July 1, 2008." The application for insurance indicates that the application was taken on July 7, 2008—the day after the accident—but shows the "effective date" to be July 1, 2008.

On July 18, 2008, twelve days after the accident, Jumbo Foods transferred title to the Ranger to Clay. In a bill of sale, also dated July 18, 2008, Jumbo Foods sold the Ranger to Clay for $1,000. Hartzell said that "[t]he rest of the paperwork finalizing the sales transaction which had been agreed upon on July 1, 2008 was finalized on July 18, 2008." A cashier's check in the amount of $1,000 was prepared on July 8, 2008, but Jumbo Foods did not receive it until July 18, 2008. The State of Washington, where the Ranger was titled, was notified of the sale by Jumbo Foods that same day.

The Tafts commenced their lawsuit on August 6, 2010, more than two years after the accident. The claims against the Gummersalls settled, and Jumbo Foods was left as the only defendant. On May 2, 2011, Jumbo Foods moved for summary judgment. In support of its motion, Jumbo Foods provided the affidavits of Clay, Hartzell, and Wiscombe. The Tafts moved to strike portions of the affidavits of Clay, Hartzell, and Wiscombe. The district court entered a memorandum decision on September 27, 2011, denying the Tafts' motions to strike, holding that

2

Jumbo Foods is not liable under the theories of imputed liability and negligent entrustment and that the independent claims of David and Wendy Taft were barred by the two-year statute of limitations. The Tafts timely appealed.

## II.
## ISSUES ON APPEAL

I.      Did the district court abuse its discretion in denying the motions to strike?
II.     Did the district court err in granting summary judgment on the issue of imputed liability under I.C. § 49-2417?
III.    Did the district court err in granting summary judgment on the issue of negligent entrustment?
IV.     Did the district court err in applying the statute of limitations?
V.      Are the Tafts entitled to attorney fees under I.C. § 12-121?

## III.
## DISCUSSION

### A. Standard of Review.

"Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion." *Steele v. Spokesman-Review*, 138 Idaho 249, 251, 61 P.3d 606, 608 (2002). Under I.R.C.P. 56(c), summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court must "liberally construe . . . the record in favor of the party opposing the motion and draw . . . all reasonable inferences and conclusions in that party's favor." *Steele*, 138 Idaho at 251, 61 P.3d at 608. Summary judgment is not appropriate "[i]f the evidence is conflicting on material issues, or if reasonable minds could reach different conclusions." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998).

"This Court applies an abuse of discretion standard when reviewing a trial court's determination of the admissibility of testimony offered in connection with a motion for summary judgment." *J-U-B Engineers, Inc. v. Security Ins. Co. of Hartford*, 146 Idaho 311, 315, 193 P.3d 858, 862 (2008). "To determine whether a trial court abused its discretion, this Court inquires whether the trial court: (1) correctly perceived the issue as discretionary; (2) acted within the boundaries of its discretion; and (3) acted consistently with applicable legal standards and reached its decision by an exercise of reason." *Id*.

3

**B. The district court did not abuse its discretion in denying the Tafts' motions to strike portions of the affidavits of Clay, Hartzell, and Wiscombe.**

In denying the Tafts' motions to strike portions of Jumbo Foods' affidavits, the district court found that they were based on personal knowledge and that references to "ownership" and "control" did not amount to legal conclusions. The Tafts contend that the affidavits are "conclusory, self-serving statements that involve mere legal conclusions," and that "the decision of the District Court not to strike these statements amounts to an abuse of discretion." Jumbo Foods counters that the trial court acted within the bounds of its discretion when it "determined that words like possession, control and ownership are expressions that ordinary people use in everyday conversations when describing their business affairs." Additionally, Jumbo Foods contends that the district court properly exercised its discretion in finding Wiscombe's affidavit admissible because Wiscombe testified from personal knowledge. Because the district court reached its decision by an exercise of reason, it did not abuse its discretion in denying the Tafts' motions to strike.

"When considering evidence presented in support of or opposition to a motion for summary judgment, a court can only consider material which would be admissible at trial." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 14, 175 P.3d 172, 176 (2007). As a rule, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." I.R.C.P. 56(e). Thus, an affidavit that is conclusory, based on hearsay, or not supported by personal knowledge does not satisfy the requirements of I.R.C.P. 56(e). *State v. Shama Resources Ltd. P'ship*, 127 Idaho 267, 271, 899 P.2d 977, 981 (1995).

The Tafts allege that portions of the affidavits of both Clay and Hartzell should be stricken because they contain "conclusory, self-serving statements that involve mere legal conclusions." In particular, the Tafts take issue with Hartzell's statement that Clay "had possession and total control over the use of the [Ranger]." The disputed portion of Hartzell's affidavit reads: "Once the agreement was signed on July 1, 2008, Clay Gummersall had possession and total control over the use of the vehicle. It was Mr. Gummersall's vehicle from that point forward." Similarly, the Tafts argue that Clay's affidavit is impermissibly conclusory where he states: "[B]ased on the verbal agreement in mid June 2008 I considered myself the owner of the vehicle and I had exclusive possession and complete control over the use of the vehicle from the time of the verbal agreement forward."

4

The district court found that both affidavits were based on personal knowledge because "[b]oth Mr. Gummersall and Mr. Hartzell can testify about who had possession of the vehicle at specific times and who had control over the vehicle at specific times." The district court determined that "[t]he references to ownership, possession, and control contained within the affidavits do not amount to legal conclusions, but are expressions an ordinary person would use in everyday conversation and in describing his or her business affairs."

The Tafts assert that paragraph 2 of Wiscombe's affidavit contains an impermissible conclusion unsupported by the facts and that Wiscombe failed to demonstrate she had any personal knowledge of the information contained in her affidavit. Paragraph 2 of Wiscombe's affidavit reads: "On July 1, 2008, Clay Gummersall advised that he had acquired a new vehicle, a 1998 Ford Ranger . . . and applied for insurance on said vehicle as of July 1, 2008." Wiscombe was not the agent who spoke with Clay on this occasion. Jumbo Foods counters that Wiscombe did in fact testify from personal knowledge because, while Wiscombe was "not the Gummersall's agent in July 2008, Wiscombe was an agent of American Family Insurance in the same office with control of the pertinent records from which she could testify by personal knowledge."

The district court determined that Wiscombe's affidavit was based on personal knowledge because:

> Even though Ms. Wiscombe was not the agent of record, that fact does not support the Plaintiffs' contention that she had no knowledge of the matters stated in her affidavit. As an agent of American Family Insurance, Ms. Wiscombe has control of the pertinent records and made her affidavit from personal knowledge. In addition, the fact that the written application was not signed until after the accident does not lead to the conclusion that the vehicle was not actually acquired until after the accident since coverage for the Ford Ranger was unequivocally effective as of July 1, 2008. This Court cannot reasonably infer that the insurance company bound its coverage of the truck retroactively after the accident had occurred.

The district court properly exercised its discretion with regard to all three affidavits in ruling on the Tafts' motions to strike. First, the district court specifically observed that an abuse of discretion standard applies when determining the admissibility of the affidavit testimony. Second, the district court acted consistently with I.R.C.P. 56 and I.R.E. 602, which provides that "[e]vidence to prove personal knowledge may, but need not, consist of the testimony of the

5

witness."[1] Third, the district court reached its conclusion by an exercise of reason—it determined that "possession" and "control" were not conclusory terms, but rather words ordinarily used in "everyday conversation." And, it reasoned that Wiscombe had personal knowledge because she was an American Family Insurance agent and had access to all the relevant insurance files. Therefore, the district court did not abuse its discretion when it denied the Tafts' motions to strike portions of the affidavits of Clay, Hartzell, and Wiscombe.[2]

### C. The district court erred when it granted summary judgment on the issue of imputed liability under I.C. § 49-2417.

The district court found that Jumbo Foods could not be liable under I.C. § 49-2417 because Jumbo Foods "clearly did not have possession or control of the Ranger at the time of the accident." The Tafts contend that Jumbo Foods was the owner of the Ranger until July 18 and, therefore, had a right to control it. Conversely, Jumbo Foods argues that, although it had title to the Ranger at the time of the accident, that fact is not controlling.

Pursuant to I.C. § 49-2417(1), "[e]very owner of a motor vehicle is liable and responsible for the death of or injury to a person . . . resulting from negligence in the operation of his motor vehicle . . . by any person using or operating the vehicle with the permission, expressed or implied, of the owner." An "owner" is someone "having the property in or title to a vehicle." I.C. § 49-116(3). The owner of a vehicle is not automatically liable for the negligence of just any person driving it. Idaho Code § 49-2417(1)[3] "imputes a driver's negligence to the owner of an automobile only when a 'person using or operating the same with the permission, expressed or implied, of such owner,' is driving." *Colborn v. Freeman*, 98 Idaho 427, 428, 566 P.2d 376, 377 (1977). Thus, an owner's liability is dependent upon a finding that the negligent driver was operating with permission of the owner. "[I]mplied permission is a question of fact for the jury, unless the evidence is subject to only one reasonable conclusion that may be deduced from the evidence." *Allied Group Ins. Co. v. Allstate Ins. Co.*, 123 Idaho 733, 738, 852 P.2d 485, 490

---

[1] Paragraph 1 of Wiscombe's affidavit reads: "I am an insurance agent for American Family Mutual Insurance Company and make this affidavit of my own personal knowledge and information."

[2] Perhaps a better objection by the Tafts would have been based on hearsay. However, while a trial court has the discretion to decide whether an affidavit offered in conjunction with a motion for summary judgment is admissible if neither party raises the issue, this Court has "not required the trial court to rule on the admissibility of the affidavit when there is no objection to it." *Esser Elec. v. Lost River Ballistics Tech. Inc.*, 145 Idaho 912, 917, 188 P.3d 854, 859 (2008). In fact, "[i]f there is no timely objection, the trial court can grant summary judgment based upon an affidavit that does not comply with Rule 56(e)." *Id*. Thus, because the Tafts did not object on hearsay grounds, the district court could properly consider those portions of the affidavits based upon hearsay.

[3] The *Colborn* Court cited former I.C. § 49-1404, which is the predecessor of the current I.C. § 49-2417(1).

6

(1993). However, "[n]o meaningful permission can be given by one without *the right to control*, or in possession of, the vehicle." *Lopez v. Langer*, 114 Idaho 873, 876–77, 761 P.2d 1225, 1228–29 (1988) (emphasis added).

In granting summary judgment, the district court stated that "based on the clear and undisputed facts, and in considering those facts in the light most favorable to the Plaintiffs, this Court finds that Jumbo Foods is not liable to the Plaintiffs under the theories of imputed statutory liability or negligent entrustment because Jumbo Foods did not have possession or control of the Ford Ranger pickup truck on the date of the accident." The district court cited the following facts in support of its determination: (1) the Ranger had been moved from the Jumbo Foods' lot to the Gummersall residence; (2) Clay had the keys to the Ranger and gave his son permission to drive it; (3) Clay sought to insure the vehicle as his own; (4) the Ranger was no longer being used in Jumbo Foods' business; and (5) Clay and Hartzell both alleged that they subjectively believed Clay had exclusive possession and control of the Ranger by at least July 1, 2008. The district court stated that "[b]ecause title and registration are not necessary to control a vehicle, title alone is not sufficient to overcome the direct evidence of possession and control."

The Tafts assert that the district court erred by failing to draw all reasonable inferences in their favor. They claim the record supports an inference that Jumbo Foods still had the right to control the Ranger at the time of the accident. They say that the July 1 agreement was unenforceable because there was "no meeting of the minds before the time of the accident," pointing out that the $5,000 price in the handwritten July 1 agreement was substantially less than the $1,000 price in the July 18 bill of sale. Thus, because there was no meeting of the minds on the sale terms, Jumbo Foods "did not give up ownership or control until after the crash." They also contend that Jumbo Foods had a right to control the Ranger because it retained title until 12 days after the accident, it had neither been paid for the vehicle nor relinquished title until July 18, it still carried insurance on the Ranger at the time of the accident, Clay did not apply for insurance on the Ranger until after the accident, and Jumbo Foods' license plates were still on the Ranger at the time of the accident.

It is clear from the record that Jumbo Foods was the owner of the Ranger at the time of the accident on July 6, 2008. It is likewise clear that Clay had possession of the vehicle on that date. Clay asserts that on July 5, 2008, he gave Derek permission to drive the Ranger and the Tafts do not dispute this assertion. The parties did not offer evidence as to whether or not Jumbo

7

Foods, the owner of the vehicle, gave Derek permission to operate the vehicle and, therefore, the issue of permission vis-à-vis Jumbo Foods was not at issue on summary judgment. The record reflects that Clay had actual physical control of the Ranger after the July 1 agreement with Jumbo Foods. However, the question left unanswered by the district court is whether Jumbo Foods had "the right to control" the Ranger on July 6, 2008.

Although the district court cited the right to control language from *Lopez*, it did not directly consider the question of whether Jumbo Foods had the right to control the Ranger. Rather, it appears to have equated "control" with "right to control" and based its decision on the fact that Clay had physical possession of the Ranger. Had the district court drawn all inferences in favor of the Tafts, as it was required to do on summary judgment, it would have concluded that material issues of fact precluded summary judgment on whether Jumbo Foods had a right to control the Ranger. For example, the district court inferred that Clay had control over the Ranger because he possessed the vehicle and its keys. However, it was not because of the July 1 agreement that Clay had the keys and vehicle in his possession but because he had previously used them in his employment with Jumbo Foods. And, while it is true that Clay sought to insure the vehicle, it is by no means clear that he did so before July 7, the date he signed the application for the insurance. It is not entirely clear whether he informed American Family that the Ranger had been totaled the day before. At the time of the accident, Jumbo Foods still maintained the vehicle on its insurance policy and its license plates were still on the vehicle.

More importantly, the July 1 agreement did not contain language of transfer, merely reciting that Jumbo Foods was "selling" the Ranger to Clay. It called for a purchase price of $5,000 but it is clear from the record that this sum was never paid. It isn't entirely clear when or why the parties reduced the purchase price to $1,000 but that must have occurred between July 1 and July 8 because the cashier's check in the amount of $1,000 was issued on the latter date. The bill of sale was not executed until July 18. It was then that Clay became the owner of the Ranger. Until it was paid the agreed purchase price, Jumbo Foods appears to have had the right to exercise control over the use of the Ranger. While it may not have had physical control of the vehicle at the time of the accident, it could well be reasonably inferred that it had the right to control the vehicle. We therefore vacate the judgment on the imputed liability issue and remand for further proceedings.

8

**D. The district court did not err in granting summary judgment in favor of Jumbo Foods on the issue of negligent entrustment.**

The district court did not separately consider the issues of imputed liability and negligent entrustment, but essentially lumped them together and decided them on the same basis. The court determined that "Jumbo Foods clearly did not have possession or control of the Ford Ranger at the time of the accident[,]" and thus could not be liable under the theory of negligent entrustment.

Under the theory of negligent entrustment, "[a]n owner or other person in control of a vehicle and responsible for its use may be held liable for damages resulting from use of the vehicle by another . . . where such person knew or should have known that such use may create an unreasonable risk of harm to others." *Lopez*, 114 Idaho at 875, 761 P.2d at 1227. Generally, it is the title owner who entrusts a vehicle to another. *Id*. However, this Court has recognized that "[r]igid and formalistic conceptions of ownership based upon the issuance of certificates of title are disfavored by the courts." *Id*. Instead, the "paramount requirement for liability . . . is whether or not the defendant had a right to control the vehicle." *Id*.

Both parties cite to *Lopez*, where this Court provided a comprehensive analysis of the control element required under the negligent entrustment theory. In *Lopez*, the Court found that a father could not be held liable when his son struck and killed a pedestrian while driving a vehicle that was registered in the father's name. 114 Idaho at 877, 761 P.2d at 1229. There, the father had purchased the vehicle with the son's money, the vehicle was maintained and controlled exclusively by the son, and the father had endorsed, or "signed-off" on, the title to the vehicle and delivered it to his son's residence prior to the death of the pedestrian. *Id*. at 875, 761 P.2d at 1227. Based on those facts, this Court found that the father's role was one of "mere accommodation" and that he "did not possess any right of possession or control over the vehicle." *Id*. at 876, 761 P.2d at 1228.

It follows that if there is no right to control, there can be no liability under the negligent entrustment theory. However, whether a right to control exists is not the end of the inquiry. In *Ransom v. City of Garden City*, this Court stated the following with regard to negligent entrustment:

> It is negligence to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends *or is likely to use the thing* or to conduct himself in the activity *in such a manner as to create an unreasonable risk of harm to others*.

9

113 Idaho 202, 206, 743 P.2d 70, 74 (1987) (quoting Rest. (Second) of Torts, § 308 (1965)).

The *Ransom* Court explained further that the above standard "is most frequently applied 'where the person is a member of a class which is notoriously likely to misuse the thing which the actor permits him to use' [and] may also apply 'if the third person's known character or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse it.'" *Id*. at 206–07, 743 P.2d at 74–75. Common examples of negligent entrustment include "where a loaded firearm is entrusted to a minor or where an automobile is entrusted to an obviously intoxicated person." *Id*. at 207, 743 P.2d at 75.

Here, the district court did not err in granting summary judgment in favor of Jumbo Foods on the issue of negligent entrustment because, even if Jumbo Foods had a right to control the Ranger, no showing was made that Derek, a licensed driver, was "notoriously likely to misuse" the vehicle. Both parties focused exclusively on the issue of whether Jumbo Foods had a right to control the Ranger. But even assuming that Jumbo Foods did have a right to control, the Tafts' argument under this theory of recovery fails. This is because the record is entirely devoid of any evidence alleging that Jumbo Foods knew or should have known that Derek was likely to use the Ranger in a way that would create an unreasonable risk of harm to others. Even when liberally construing the record in favor of the Tafts, and drawing all reasonable inferences and conclusions in their favor, the result is the same: the Tafts made no showing that Jumbo Foods knew or should have known that Derek was an unreasonably risky driver. Though a minor, Derek was nonetheless a licensed driver, and nothing in Idaho case law suggests that minors are notoriously likely to misuse motor vehicles. We therefore affirm the district court's decision to grant summary judgment in favor of Jumbo Foods on the negligent entrustment theory.

**E. The district court did not err in applying the statute of limitations.**

Having determined that none of the Tafts had viable claims against Jumbo Foods and dismissing the complaint, the district court had no need to consider issues raised by the parties regarding the application of the statutes of limitation. Nevertheless, the court held that "the independent claims of Plaintiffs David and Wendy Taft are barred by the two-year statute of limitations." Since the statute of limitations issues will be revisited on remand, we will address the issue to provide guidance to the district court.

There was some confusion below regarding the types of claims being pursued by the Tafts and how the statute of limitations might apply to each type. The Tafts contended that David

10

and Wendy had both derivative claims and independent or direct claims. They described their derivative claims as seeking recovery for Trevor's past and future medical care, his loss of income, and the loss of his "services, society and companionship." They did not describe what their independent or direct claims encompassed. They acknowledged that the two-year statute of limitations in I.C. § 5-219 barred their independent or direct claims because the accident occurred on July 6, 2008, and suit was not instituted until August 6, 2010. The district court correctly held that their independent or direct claims, whatever they consisted of, were barred by the statute of limitations.

The Tafts contend that the statute of limitations in I.C. § 5-230, which tolls the statute of limitations for minors who are entitled to bring an action, also acts to toll the statute of limitations for their derivative claims. That is, since Trevor need not have brought suit to recover damages for his injuries until August 8, 2012 (when he reached age 20), they were also entitled to tolling for their derivative claims.

The flaw with the Tafts' argument is that, whether you characterize their various claims as independent, direct, or derivative, they were seeking recovery in their own right. They were not subject to a disability like their son, a minor. There does not appear to be any reason why they need not have filed their action within the two-year statute of limitations. They argue it would be more convenient if they were able to have their suit coincide with Trevor's suit to recover in his own right upon attaining the age of majority, but neither I.C. § 5-219 nor I.C. § 5-230 provide for tolling a statute of limitations for actions wherein adults seek damages.

Thus, on remand the only damage claim to be considered will be that of Trevor, the claims of his parents being barred by the statute of limitations. The complaint clearly alleges that Trevor is seeking recovery of damages. It states in part "Trevor has incurred and will further suffer damages for pain, suffering, mental and emotional distress, loss of income, loss of earning capacity and costs for medical care, all as a direct and proximate result of the collision and the Defendants' negligence." A question that will need to be considered and determined on remand is whether Trevor may recover medical expenses incurred during his minority. That issue was argued at the hearing on the motion for summary judgment but, because of the determination of the imputed liability and negligent entrustment issues, was not determined on summary judgment.

11

The Tafts' argument at the summary judgment hearing was not particularly enlightening on this issue. Counsel initially addressed the need to toll the Taft parents' derivative claims but then switched to asserting that those claims, particularly for medical expenses, had been waived in favor of Trevor, who was the only plaintiff entitled to seek recovery of the same. Counsel for Jumbo Foods argued that any waiver had occurred after the two-year limitations period and therefore was ineffective.

Both parties cited to *Lasselle v. Special Products Co.*, 106 Idaho 170, 677 P.2d 483 (1983), where this Court dealt with the waiver issue. We said:

> On cross-appeal Lasselle argues the trial court erred in ruling that an unemancipated minor has no cause of action to recover for medical expenses incurred in treating him during his minority. The general rule, recognized by the trial court, is that the parents have the primary right of action for expenses incurred by the child in connection with the injury. However, parents may waive or relinquish their rights in favor of the child so as to entitle the child to recover the full amount of damages. This waiver may be formal or implied from the party's conduct such as failing to object to the bringing of an action by the child in which the child claims damages properly belonging to the parent, or when he testifies in the child's action in regard to such damages.
>
> The trial court cited I.C. § 32-1003 for the proposition that the parents have the exclusive cause of action for recovery of medical expenses for treatment of their minor child. I.C. § 32-1003 provides that if a parent neglects to provide articles necessary for a child according to the parent's ability, then a third person may supply the necessaries and recover the reasonable value from the parent. We agree with Lasselle that this statute does not purport to limit a child's right to recover his medical expenses. Allowing the child to recover if the parents waive their primary right of recovery does not require the defendant to pay the minor's medical expenses twice. The parents' waiver adequately protects the defendant.

*Id.* at 173−74, 677 P.2d at 486−87 (internal citations omitted). Based on our holding in *Lasselle*, we conclude that Trevor may seek to recover his medical expenses incurred from the date of the accident in the proceedings on remand. It goes without saying, however, that he must establish liability on the part of Jumbo Foods under I.C. § 49-2417.

**F.  The Tafts are not entitled to attorney fees on appeal under I.C. § 12-121.**

The Tafts argue that they are entitled to attorney fees on appeal, pursuant to I.C. §12-121 and I.A.R. 41. Their argument, in its entirety, states as follows: "Appellants . . . request attorney fees on appeal on the bases of [I.A.R.] 41 and [I.C.] § 12-121. The basis for Appellant's request for attorney fees on appeal is that, should Appellant be the prevailing party on this appeal, [I.C.] § 12-121 makes discretionary the allowance of reasonable attorney fees."

I.A.R. 41 "sets forth the procedure for awarding attorney fees in appeals before this Court, but does not provide authority to award attorney fees." *Swanson v. Kraft, Inc.*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989). This Court has repeatedly held that "[a] citation to statutes and rules authorizing fees, without more, is insufficient." *Carroll v. MBNA America Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009). Because the Tafts have failed to put forth any argument as to why fees should be awarded under I.C. §12-121, we decline to award attorney fees to the Tafts on appeal.

## IV.
## CONCLUSION

We affirm the district court's judgment dismissing the Tafts' claim for negligent entrustment. We vacate the judgment dismissing the claim for imputed liability under I.C. § 49-2417 and remand the case for further proceedings consistent with this opinion. Costs on appeal to the Tafts.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.