# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39957

LIBERTY NORTHWEST INSURANCE
CO., individually and as Subrogee of DUANE
R. GRANT and DOUGLAS E. GRANT, d/b/a
GRANT 4-D FARMS,

      Plaintiff-Appellant-Cross Respondent,

    v.

SPUDNIK EQUIPMENT COMPANY, LLC,
an Idaho limited liability corporation,

      Defendant-Respondent-Cross
      Appellant,

   and

JOHN DOES I-IV and JOHN DOE
CORPORATIONS I-IV,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2013 Term

2013 Opinion No. 119

Filed: November 26, 2013

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

The judgment of the district court is affirmed.

Anderson, Julian & Hull, LLP, Boise, for appellant. Mark D. Sebastian argued.

Stewart Taylor & Morris, PLLC, Boise, for respondent. Daniel W. Bower argued.

---

J. JONES, Justice.

Liberty Northwest Insurance initiated this product liability action against Spudnik Equipment Company, seeking to recover worker's compensation benefits it paid to an employee of its insured, Grant 4-D Farms, who was injured while working on a potato conveyor. The district court dismissed the case on summary judgment, finding that Liberty had failed to

1

adequately identify the equipment involved in the accident. Liberty appealed to this Court and we affirm.

## I.
## FACTS AND PROCEDURAL HISTORY

On October 9, 2008, Armando Olmos, an employee of Grant 4-D Farms (Grant), was injured when his hand was pulled into the junction or "nip point" between two potato conveyor tables (hereinafter, conveyors or tables). Olmos was a "clod picker," and his duties included standing next to the conveyor system to remove debris, rocks, or other unwanted materials from the conveyor tables. On the day of the accident, Grant was using five or six conveyors, attached end-to-end, to move potatoes into its potato cellar. The conveyors are supposed to run in the same direction but, because they are operated by three-phase electric motors, they can run equally well in both directions. The direction the conveyor runs depends on which power wire is hooked up to the terminal on the motor. Rearranging the conveyors or pulling one out of the line could result in a conveyor reversing direction. Olmos' hand was pulled in between two conveyors that were incorrectly running in opposite directions.

Since the 1980's, Grant has used conveyors manufactured by three separate companies: Spudnik, Double L, and STI. Grant owns at least two different models of Spudnik conveyors. Grant purchased its conveyors used and many have been modified by previous owners. Any conveyors that are not interchangeable with its system are modified by Grant so as to be interchangeable with the other components of its conveyor system. These modifications include changing bolt connection patterns between the two Spudnik models, altering the Double L conveyor ends to match up with the Spudnik conveyor ends, changing the electrical connections so that they are uniform, and adding phase reversers. Typically, it is Grant and not Spudnik, that performs the modification and maintenance work on the conveyors.

After Olmos' accident, Liberty's investigator, Tom Groat, identified only one of the conveyors by its serial number. It is unclear how the identified conveyor fit into the conveyor system. It may either have formed half of the nip point that caused the injury to Olmos' hand or it may have merely formed part of the line of conveyors.

Liberty ultimately paid out $214,221 in worker's compensation benefits and initiated the present subrogation action against Spudnik on February 1, 2010. Spudnik filed a motion to dismiss for Liberty's failure to preserve evidence of the conveyors involved in the injury, which the district court denied. Spudnik then filed a motion for summary judgment, which the district

judge granted, based on Liberty's failure to identify the conveyors that caused Olmos' injuries. Liberty timely appealed to this Court.

## II.
## ISSUES ON APPEAL

I.      Did the district court err in granting summary judgment to Spudnik?[1]
II.     Should Idaho law be modified to permit district courts the discretion to fashion an appropriate sanction where an experienced litigator fails to preserve evidence?

## III.
## DISCUSSION

### A.     Standard of Review.

"Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion." *Steele v. Spokesman-Review*, 138 Idaho 249, 251, 61 P.3d 606, 608 (2002). Under I.R.C.P. 56(c), summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court must "liberally construe . . . the record in favor of the party opposing the motion and draw . . . all reasonable inferences and conclusions in that party's favor." *Steele*, 138 Idaho at 251, 61 P.3d at 608. Summary judgment is not appropriate "[i]f the evidence is conflicting on material issues, or if reasonable minds could reach different conclusions." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998).

### B.     The district court properly granted summary judgment in favor of Spudnik because Liberty cannot present a *prima facie* case without identifying which conveyors were involved in the accident.

The district court granted summary judgment in favor of Spudnik as to all of Liberty's claims: (1) negligent design; (2) negligent manufacture; (3) negligent failure to warn; (4) strict liability in tort; and (5) breach of express and implied warranty. Liberty has failed to raise its strict liability and warranty claims on appeal and, therefore, we do not address them. In support of its negligence claims, Liberty argues that the district court erred in granting summary judgment to Spudnik "by presuming, without proof or evidence, that alterations or lack of

---

[1] Liberty lists as an additional issue on appeal, whether the district court erred by not granting summary judgment to Liberty. Though Liberty never filed a cross-motion for summary judgment below, it did request in its briefing that the district court "grant summary judgment to the Plaintiffs on the issue of defective design and warnings." Regardless, the failure to grant summary judgment in favor of a movant is not an appealable issue.

maintenance could have caused the injury." Spudnik counters that summary judgment was proper because Liberty failed to establish a *prima facie* case with regard to each of its claims.

    1.    <u>Negligent Design and Negligent Manufacture</u>.

To establish a *prima facie* case in a products liability action, the plaintiff has the burden of proving that "1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the manufacturer." *Farmer v. Int'l Harvester Co.*, 97 Idaho 742, 746–47, 553 P.2d 1306, 1310–11 (1976). Where, as here, the *prima facie* case is met with evidence that the product has been modified since leaving the control of the manufacturer, the plaintiff must show "the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant." *Id.* at 747, 553 P.2d at 1311.

Liberty asserts that the specific design defect is the absence of guards or other protective devices around the nip point between two conveyors. For this contention, Liberty relies on the deposition testimony of its expert, Dr. Richard Gill. Dr. Gill opined that "[t]he primary cause [of the accident], if you go back to fault-free analysis far enough, is designing a piece of equipment with an in-running nip point that has no guard and no Safety by Design and virtually no Persuasion Control." Because the absence of guards is common to all conveyors manufactured by Spudnik, Liberty contends, the district court erred in granting summary judgment in Spudnik's favor. Spudnik responds that "[a]t best, [Liberty] can only describe a hypothetical 'conveyor system'" and it is therefore impossible to say whether a particular defect caused the injury.

It is undisputed that Liberty identified by serial number only one conveyor in use on the day of the accident. The district court accurately noted why this was problematic for Liberty, stating:

> [T]he evidence fails to show which conveyors were in use on the date in question. Thus, the jury cannot determine in what condition [Grant] purchased the conveyors; whether the conveyors were modified by Spudnik, Grant 4-D Farms, or a third party; the extent of such modifications; what warnings, if any, each conveyor table bore; the condition of the tables when they left Spudnik's possession, or the type of maintenance performed upon a particular table.

Nevertheless, Liberty argues that "identification of the specific [conveyors] by serial number [is] irrelevant" because a product liability case may be proven by direct or circumstantial evidence of (1) a malfunction of the product; (2) the absence of evidence of abnormal use; and (3) the absence of evidence of reasonable secondary causes which would eliminate liability of

4

the defendant. In support of its argument that the conveyors in use on the date of the accident were manufactured exclusively by Spudnik, Liberty cites to the depositions of both Gerardo Saucedo, Mr. Olmos' supervisor, and Duane Grant, an owner of Grant. Saucedo testified that it was Spudnik conveyors, and not Double L conveyors, in use on the day of the accident. Mr. Grant testified that, in his recollection, the conveyor system in use at the time "was all Spudnik."

However, Mr. Grant also testified:

[I]n 2008, I believe we were running four cellar systems, one of which was pretty much exclusively Spudnik. We will occasionally—back then, we would occasionally add in a Double L conveyor into a Spudnik line for a brief period. But it required some adjustments on the belting to make that work and then readjusting back when we took it back into the Double L. So we didn't do that except in emergencies.

Notably, Mr. Grant testified that "[t]he only way it would be possible" to identify all of the equipment that was present on the day of the accident would be if Liberty's investigator recorded the serial numbers off of each piece. Kalvin Miller, another owner of Grant, agreed, saying "[i]t would be difficult to pinpoint exact conveyors."

Even when liberally construing the evidence in Liberty's favor and assuming that the conveyor system in use on the date in question was manufactured exclusively by Spudnik, Liberty still fails to present a *prima facie* case because it cannot get around the fact that Grant purchases used conveyors. Mr. Grant testified that "in terms of new equipment, literally, I think the only thing that we have purchased brand-new from Spudnik is that one planter. I believe that's the only thing that we've bought brand-new from them." Therefore, as Spudnik points out, "the equipment involved in the accident admittedly had prior owners who . . . modified, changed, rewired and reconfigured their equipment to fit their particular farming needs."

Because Grant bought used conveyors and many were modified by previous owners or by Grant, it is impossible to determine whether a defect existed at the time the conveyors left Spudnik's control. Liberty is thus also unable to present direct or circumstantial evidence that shows the absence of reasonable secondary causes. Too many unknown quantities remain—the record indicates that Grant owns at least two models of Spudnik conveyors; buys its conveyors used, many of which have been modified by the previous owner; and modifies its own equipment once purchased. Put simply, without knowing which conveyors were in use on the day of the accident, Liberty cannot present a *prima facie* case; nor should Spudnik be expected to defend a

theoretical system, where the variables are many and the confirmed features of the conveyors few.

       2.      <u>Negligent Failure to Warn</u>.

Under the theory of negligent failure to warn, a "product is defective if the defendant has reason to anticipate that danger may result from a particular use of his product and fails to give adequate warnings of such danger." *Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 823, 979 P.2d 1174, 1181 (1999) (internal citations omitted). Additionally, comparative negligence is not a bar to recovery; rather, the plaintiff may still recover as long as his responsibility for the injury is less than that of the manufacturer. *Id.*

Liberty argues that the Spudnik equipment was defective because, according to Dr. Gill, it "lacked any warning labels 'of an in-running nip point at the location where the hazard existed.'" In turn, Spudnik responds that "because the insurance company has identified only one component of the 'conveyor system' and cannot even identify where that component part fit in the conveyor line, it is equally impossible to determine whether the 'conveyor system' failed to give adequate warning of the alleged danger."

Here, summary judgment was proper because without identifying the conveyor system in use at the time of the accident, it is impossible to say whether or not warning labels were displayed. Liberty states: "When asked how he knew there were no such labels or warnings present on the equipment, Dr. Gill responded that his information was 'based on the video [of the Spudnik conveyors], the photographs, and the Spudnik manual because the manual tells you what warning labels are on the equipment and there's none for that.'" (emphasis omitted). In fact, the transcript shows that whether the photos and video relied on by Dr. Gill contained images of the equipment in use on the day of the incident was never established with any certainty:

> Mr. Bower: Okay. How do you know that the pictures and video are of the conveyors that were involved in the accident?
> Dr. Gill: That was my understanding, was that the video was taken shortly after the incident and that was equipment. That was just an understanding I had.
> Mr. Bower: I just want to know what the basis of that understanding is.
> Dr. Gill: Just from having received the material from Mr. Pappas and the investigative report, that was understanding I had. If I'm mistaken, certainly I'm open to investigating that further.
> Mr. Bower: Did anyone from Grant 4-D Farms tell you that that was the equipment that was involved in the accident?
> Dr. Gill: I don't recall having received that information. No, sir.

Thus, Dr. Gill's conclusion that there were no labels or warnings on the equipment is based on his review of video and photographs that may—or may not—be images of the equipment involved in the accident. The district court noted that "Liberty concedes that the conveyors continued to be used immediately after the accident." In addition, Tom Groat, Liberty's investigator, testified that he took the photographs on October 15th, six days after the accident, and that on that day, the conveyors were not set up because of recent, heavy snowfall. What's more, Groat did not record the video until October 20, 2008. Thus, within the period of time between the accident and the days in which the photos and video were taken, it is conceivable—and even probable—that the conveyor tables were moved around, or swapped with others, as was common practice at Grant.

Equally problematic is that based on the lack of evidence presented, Spudnik has no chance of proving that others were responsible for the injury, thereby reducing its potential liability under the doctrine of comparative negligence. The district court clearly recognized this:

> Assuming Spudnik failed to warn end users of a risk of harm from the nip points created when two conveyor tables are connected, and assuming that the lack of warning caused Olmos' injuries, Spudnik must be given the opportunity to mitigate its damages by presenting evidence of Grant 4-D Farm's alteration or modification of the tables in use, or its failure to conduct maintenance upon a particular table. Indeed, a jury could potentially decide that the maintenance and/or alterations to the tables was the proximate cause of Olmos' injuries. Without identification of the table in question, Spudnik is prevented from fully investigating and presenting its case.

Because of Liberty's failure to identify the conveyor system in use at the time of the accident, Spudnik is now unable to offer a meaningful defense to any claim asserted by Liberty. General notions of fairness preclude Liberty from profiting from its own laxity and inattention to detail. Thus, we affirm the district court's grant of summary judgment in favor of Spudnik as to Liberty's negligent failure to warn claim.

### C. We decline to address Spudnik's cross appeal.

On cross appeal, Spudnik asks this Court to modify existing Idaho case law and conclude that Liberty's failure to preserve evidence warrants dismissal or another appropriate sanction, but only "in the event that summary judgment is not affirmed." Because we affirm the district court's grant of summary judgment in favor of Spudnik, we find it unnecessary to consider Spudnik's cross appeal.

**IV.**
**CONCLUSION**

We affirm the judgment of the district court and award costs on appeal to Spudnik.

Chief Justice BURDICK, and Justices EISMANN, HORTON, and Justice Pro Tem SCHROEDER CONCUR.