# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40504

KARRIN MASSEY and MARK MASSEY, husband and wife, individually and as parents and next friends of EMMA GRACE MASSEY, a minor child,

Plaintiffs-Appellants,

v.

CONAGRA FOODS, INC., a Delaware corporation,

Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Idaho Falls, May 2014 Term

2014 Opinion No. 54

Filed: June 17, 2014

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County.  Hon. Stephen S. Dunn, District Judge.

The judgment of the district court is <u>vacated</u>.

Racine Olson Nye Budge & Bailey, Pocatello, for appellants.  Richard A. Hearn argued.

McGrath North Mullin & Kratz, Omaha, Nebraska, and Benoit Alexander Harwood & High, Twin Falls, for respondent.  Brian T. McKernan argued.

_____

J. JONES, Justice.

This appeal arises out of a products liability case. In early June of 2007, Karrin Massey consumed at least one, but perhaps several, poultry pot pies that were manufactured by ConAgra Food, Inc. and sold under the Banquet brand name. Soon after, Karrin, who was six months pregnant at the time, developed salmonellosis. After an outbreak of salmonella was linked to Banquet pot pies, it was discovered that Karrin's strain of salmonella matched the strain of salmonella found in the contaminated pot pies. Karrin, her husband, Mark Massey, and their daughter Emma filed suit against ConAgra, alleging claims of product liability, negligence, and breach of warranty. The district court eventually granted ConAgra's motion for summary judgment on the grounds that the Masseys had failed to establish the pot pies in question were

1

defective. The Masseys filed a motion for reconsideration, which was denied. The Masseys then appealed to this Court.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In early May of 2007, the Centers for Disease Control ("CDC") identified a salmonella outbreak in several states, including Idaho. After an extensive investigation, the most likely source of the outbreak was identified as pot pie filling that was manufactured by ConAgra and marketed as part of the Banquet brand.

Appellant Karrin Massey had long enjoyed pot pies as part of her diet. In the first part of June, 2007, Ms. Massey consumed one or more Banquet pot pies. Ms. Massey does not remember if she cooked the pot pies in the oven or in the microwave. She testified that she usually—but not always—cooked them in the oven, and that she "always followed [cooking] time instructions." During the first week of June, Ms. Massey began to experience diarrheal symptoms and was hospitalized twice due to dehydration. On June 10, 2007, a stool sample was cultured for salmonella. The sample tested positive, and Ms. Massey was hospitalized on June 13 for treatment. On June 14, the Idaho Department of Health and Welfare ("IDHW") interviewed her in hopes of determining a possible source of her infection. At this time, Ms. Massey was approximately six months pregnant with her daughter, Emma. Because she was pregnant, Ms. Massey declined to take certain medications that may have been more effective in treating salmonellosis, but could have harmed her unborn child. Emma Grace Massey was born on October 3, 2007. On appeal, the Masseys do not delve into how Emma was injured, although ConAgra notes that Emma's birth itself was without complications.

Ms. Massey was treated for salmonellosis until approximately September 4, 2007, at which time three consecutive stool samples tested negative for the presence of salmonella. Ms. Massey's particular strain of bacteria was later identified as salmonella enterica, serovar 4,5,12:i:- monophasic.

According to the Masseys, near the end of 2007, CDC investigators collected samples of pot pie crust and filling at ConAgra's plant, which were found to contain salmonella enterica, serovar 4,5,12:i:-, the same strain present in Ms. Massey's stool sample. ConAgra disputes this, stating that in fact, "no salmonella was ever found within ConAgra's pot pie facility." In any

event, salmonella enterica, serovar 4,5,12:i:-, the same strain present in Ms. Massey's stool sample, was later found in Banquet pot pies sampled from a Boise store.

Ms. Massey and her husband Mark filed a complaint on April 2, 2010, individually and on behalf of their daughter Emma. Therein, they alleged claims based on product liability, breach of warranty, and negligence. On March 21, 2012, ConAgra moved for summary judgment, alleging that the Masseys' claims were barred because of the statute of limitations and that the Masseys could not establish that the pot pies in question were defective. The district court, upon request, granted the Masseys a continuance so that they could depose Dr. Leslie Tengelsen, an Idaho State Deputy Epidemiologist. Shortly after Dr. Tengelsen's deposition was taken, ConAgra filed a renewed motion for summary judgment. The district court held a hearing on ConAgra's renewed motion on June 4, 2012. In its resulting July 3, 2012 order ("Summary Judgment Order"), the district court found in ConAgra's favor, holding that the Masseys had failed to establish a genuine issue of material fact with regard to whether a product defect existed. The Masseys filed a timely motion for reconsideration, arguing that the district court misunderstood the main issue of the case and misconstrued certain facts. The district court entered an order denying the Masseys' motion on September 28, 2012 ("Order Re: Motion for Reconsideration"). The Masseys filed a timely appeal.

## II.
## ISSUES ON APPEAL

I.  Whether the district court erred in determining that the Masseys failed to establish a genuine issue of material fact that the pot pies were defective?
II.  Whether the district court erred in finding that there was no genuine issue of material fact as to the Masseys' negligence claim?
III.  Whether the Masseys waived their right to challenge the district court's denial of their motion to reconsider?
IV.  Whether the district court erred in *sua sponte* concluding that the Masseys' failure to warn claim was not adequately pleaded?

## III.
## DISCUSSION

### A. Standard of review.

The applicable standard of review is well-settled:

"Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion." *Steele v. Spokesman–Review*, 138 Idaho 249, 251, 61 P.3d 606, 608 (2002). Under I.R.C.P. 56(c), summary judgment is appropriate when "the pleadings,

3

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court must "liberally construe . . . the record in favor of the party opposing the motion and draw . . . all reasonable inferences and conclusions in that party's favor." *Steele*, 138 Idaho at 251, 61 P.3d at 608. Summary judgment is not appropriate "[i]f the evidence is conflicting on material issues, or if reasonable minds could reach different conclusions." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998).

*Liberty Northwest Ins. Co. v. Spudnik Equip. Co., LLC*, 155 Idaho 730, 732–33, 316 P.3d 646, 648–49 (2013).

Additionally, this Court has recently clarified the standard of review utilized in reviewing a district court's denial of a motion to reconsider. "[W]hen the district court grants summary judgment and then denies a motion for reconsideration, 'this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment.' This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Bremer, LLC v. E. Greenacres Irrigation Dist.*, 155 Idaho 736, 744, 316 P.3d 652, 660 (2013) (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)).

### B. The district court erred in determining that the Masseys failed to establish a genuine issue of material fact that the pot pies were defective.

In their complaint, the Masseys put forth three claims: products liability, negligence, and breach of warranty. In order "[t]o establish a *prima facie* case in a products liability action, the plaintiff has the burden of proving that '1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the manufacturer.'" *Liberty*, 155 Idaho at 733, 316 P.3d at 649 (*quoting Farmer v. Int'l Harvester Co.*, 97 Idaho 742, 746–47, 553 P.2d 1306, 1310–11 (1976)). The district court granted summary judgment on the grounds that the Masseys did not show that a genuine issue of material fact existed with regard to whether the pot pies were defective. In its Summary Judgment Order, the district court determined that "[a] pot pie contaminated with salmonella is not defective because salmonella in an uncooked or under cooked product is not considered an adulterant." The district court explained that "[e]ven assuming that a pot pie eaten by Massey was contaminated by salmonella, the deposition testimony of Dr. Tengelsen clearly fails to establish that a pot pie contaminated with salmonella is defective." The district court also concluded that a Food Safety and Inspection Service (FSIS) investigation and its "conclusions

4

drawn therefrom does not determine that any of the pot pies were adulterated, and therefore, defective."

The Masseys argue that Karrin's affidavit established a defect under Idaho law, that Dr. Tengelsen's testimony did the same, and that the district court erred in its analysis of certain nonbinding case law. ConAgra disputes all of these assertions, and adds that the district court did not err in failing to find evidence of a defect based on USDA guidelines.

"[T]he term 'defect' is not susceptible of a general definition but must be considered on a case by case basis." *Farmer*, 97 Idaho at 747, 553 P.2d at 1311. In defining what constitutes a defect, this Court has favorably quoted the Restatement (Second) of Torts, § 402A (comment g 1965) as follows: "Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." *Id*. Comment i to § 402A defines "unreasonably dangerous" as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id*. This Court has also quoted Prosser on Torts for the proposition that "'the prevailing interpretation of "defective" is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety.'" *Id*. (citing Prosser, Torts, § 99, p. 659 (4th ed. 1971)). A defect can be shown either by direct evidence, or by circumstantial evidence. *Id*. "A circumstantial evidence showing under the *Farmer* case [requires] proof of: (1) the malfunction of the product; (2) the lack of evidence of abnormal use; and (3) proof excluding the possibility of other 'reasonable causes.'" *Doty v. Bishara*, 123 Idaho 329, 332, 848 P.2d 387, 390 (1992).

When circumstantial evidence is presented, it is the trier of fact who "is invited to infer the existence of a defect." *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Furthermore, the defect may be established solely based upon the "[t]estimony of the user [or] operator of the product as to the circumstances of the event." *Farmer*, 97 Idaho at 748, 553 P.2d at 1312. This Court has explicitly refused to require a plaintiff to proffer expert testimony as part of its *prima facie* products liability case, stating: "[t]hough it is no doubt true that a plaintiff may bolster his or her case considerably through the use of expert testimony, we nevertheless decline to require such expert testimony for the establishment of a

5

plaintiff's prima facie case." *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 704, 692 P.2d 345, 348 (1984).

The district court erred in its analysis of what constitutes a product defect under Idaho law. Specifically, it was error to equate "defective" with "adulterated." The origin and rationale behind using these terms interchangeably is unclear, although it was the Masseys who first made mention of the term in their complaint.[1] "Adulterated" is a defined term under Chapter 10 of 21 U.S.C. § 453, a federal statute. 21 U.S.C. § 453.[2] Generally, Chapter 10 discusses "Poultry and Poultry Products Inspection." *Id.* No link exists between a defined term in a federal statute and what constitutes a product defect under Idaho law; thus, the district court's erroneous assumption to the contrary was in error.

Instead of determining that a pot pie must be "adulterated" to be defective, the district court should have looked to existing case law to determine what constitutes a product defect in Idaho. Under *Farmer*, a defect can be established solely based on the testimony of the user.[3] Here, Karrin testified that (1) she ate at least one and possibly several Banquet brand pot pies during the last part of May and the first part of June; (2) despite not remembering whether she cooked those pot pies in the microwave or oven, she "always followed time instructions" on the

---

[1] Paragraph 20 of the Masseys' complaint states:

> Defendant ConAgra had a duty to comply with all statutory and regulatory provisions pertaining to the manufacture, distribution, storage, labeling, and sale of food products, including, but not limited to, the Federal Food, Drug and Cosmetics Act, which bans the sale and distribution of *adulterated* food.

[2] That provision provides:

> **(g)** The term "adulterated" shall apply to any poultry product under one or more of the following circumstances:
>
> > **(1)** if it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance, such article shall not be considered adulterated under this clause if the quantity of such substance in or on such article does not ordinarily render it injurious to health;
> > . . . .
> > **(4)** if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health;
> > . . . .

21 U.S.C. § 453.

[3] Because of this rule, the parties' relentless focus on whether the deposition testimony of Dr. Tengelsen established a product defect is irrelevant. Again, expert testimony is not required for a plaintiff to establish the existence of a product defect. *Fouche*, 107 Idaho at 704, 692 P.2d at 348.

6

box; (3) she was diagnosed with salmonellosis on June 13, 2007; and (4) her particular strain of salmonella was later found in Banquet brand pot pies. As for whether there was proof of the lack of evidence of abnormal use and the lack of other reasonable causes—which again is required under *Farmer* when making a showing of circumstantial evidence—those are questions best answered by a jury, since it is the trier of fact who "is invited to infer the existence of a defect." In this case, the Masseys requested a jury trial. Based on Karrin's testimony alone, a jury could reasonably conclude that a pot pie cooked according to the instructions that nonetheless retains salmonella bacteria is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer," "does not meet the reasonable expectations of the ordinary consumer as to its safety," and is therefore defective.

Because the district court erred in its analysis of what constitutes a product defect under Idaho law, and because a jury could reasonably conclude that Karrin's testimony sufficiently demonstrated product defect, we vacate the district court's grant of summary judgment.

### C. The district court erred in granting summary judgment on the issue of negligence.

The district court also granted summary judgment on the Masseys' negligence claim, again because of a failure to show product defect. On appeal, the Masseys seem to be arguing that because the Idaho pattern jury instruction for negligence does not make mention of the term "defect," a negligence claim does not require that element.

Regardless of whether a products liability case "is based on warranty, negligence or strict products liability, plaintiff has the burden of alleging and proving that 1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the manufacturer." *Farmer*, 97 Idaho at 746–47, 553 P.2d at 1310–11. Thus, product defect is a necessary element in a products liability case that is based on negligence.

Because we hold that the district court erred in its product defect analysis, the Masseys' negligence claim survives. We thus vacate the district court's decision as to the Masseys' negligence claim.

### D. The Masseys did not waive their right to challenge the district court's denial of their motion to reconsider.

In its response brief, ConAgra asserts that because the Masseys "never challenge or request this court to reverse" the district court's Order Re: Motion for Reconsideration, the

7

Masseys have waived both the right to contest that order, as well as the right to make any arguments on appeal that were first made in their memorandum in support of their motion for reconsideration. The Masseys reply that the district court's two orders—its Summary Judgment Order and its Order Re: Motion for Reconsideration—are "inextricably intertwined" because the Order Re: Motion for Reconsideration essentially just reiterates what had already been decided in the previous Summary Judgment Order.

For its assertion that the Masseys waived some of their arguments, ConAgra relies on the following oft-cited rule and other variations thereof: "When issues cited on appeal are not supported by propositions of law, authority, or argument, they will not be considered." *Langley v. State Indus. Spec. Indem. Fund*, 126 Idaho 781, 784, 890 P.2d 732, 735 (1995). ConAgra states that the Masseys' "waiver is further highlighted by their omission of the appropriate standard of review that" guides this Court when analyzing orders granting or denying motions to reconsider.

This argument is unpersuasive. The notice of appeal and a subsequent amended notice both indicate that the Masseys are appealing both the Summary Judgment Order and the Order Re: Motion for Reconsideration. Moreover, the contents of both orders are much the same, with one exception. In its Order Re: Motion for Reconsideration, the district court addressed for the first time the issue of whether the Masseys sufficiently pleaded a failure to warn claim. The Masseys have unequivocally raised the appropriateness of this holding as an issue on appeal. ConAgra cites to no authority that holds the omission of one of the applicable standards of review constitutes a waiver of that argument when that argument is otherwise made within the appellate brief. The Masseys are obviously disputing the holdings in the district court's Order Re: Motion for Reconsideration, and while they may have omitted the applicable standard of review, that does not constitute a waiver of the arguments that they otherwise supported with authority and argument.

### E. The district court erred in finding that the Masseys' failure to warn claim was not adequately pleaded.

The Masseys argue that the district court erred in its Order Re: Motion to Reconsider when it determined, *sua sponte*, that the Masseys did not adequately plead a failure to warn claim. The Masseys allege that the factual allegations within the complaint put ConAgra on actual notice that a failure to warn claim was being made. ConAgra counters that "[i]n reality,

Appellants did not even attempt to suggest they had [pleaded] such a claim until after the [d]istrict [c]ourt had granted [s]ummary [j]udgment and Appellants realized they had no evidence of product defect." ConAgra's full response to this argument takes up a half page and is devoid of any legal authority.

In its Order Re: Motion for Reconsideration, the district court stated: "It is obvious at this point that Plaintiffs are making a standard failure to warn argument. . . . However, Plaintiffs failed to plead a failure to warn claim in their Complaint." The district court subsequently denied the Masseys' motion to reconsider "as it relates to their failure to warn arguments." Notably, ConAgra did not—at any point—assert in its district court briefing that the Masseys insufficiently pleaded a failure to warn claim.

The district court's *sua sponte* determination was in error. First, while their complaint could have been clearer, the Masseys did adequately plead a failure to warn claim. Second, a district court's *sua sponte* dismissal of a claim based on an insufficient pleading is in error when neither party raised the issue and no opportunity was given to argue that, in fact, the claim was sufficiently pleaded.

The language that constitutes a failure to warn claim is found in paragraph 19 of the Masseys' complaint, under a "Product Liability" heading. That paragraph states in part: "[t]he pot pie consumed by [Ms. Massey] was contaminated with Salmonella because ConAgra . . . failed to ensure that its cooking instructions would, if followed by the consumer, kill Salmonella and other pathogens."

In its brief in support of its motion to reconsider, the Masseys wrote:

The Court's decision also rests on the premise that the only defect identified by the Plaintiffs was the pies' "adulteration" with *Salmonella*. However, Plaintiffs also identify faulty cooking instructions and warnings as defects. In a products liability case, a plaintiff may prevail by showing that a product is unreasonably dangerous either because it is inherently defective or because the manufacturer fails to warn of dangers, or provides inadequate instructions. A failure to provide adequate warning of dangers renders a manufacturer liable under products liability principles. . . . In this case, regardless of whether *Salmonella* is considered an adulterant, the pie is still unreasonably dangerous because the cooking instructions were confusing, inadequate to ensure safe cooking, and failed to warn of the danger of *Salmonella*. . . . The evidence establishes at least a question of fact whether the cooking instructions were adequate. Karrin's affidavit establishes that she cooked the pie per the instructions but still contracted salmonellosis. . . . That alone is evidence from which a jury could conclude that the instructions were inadequate.

9

ConAgra's response brief in opposition of the Masseys' motion to reconsider indicates that the adequacy of the cooking instructions was raised earlier. ConAgra wrote:

> The Court's summary judgment ruling also considered and analyzed additional arguments made by Plaintiffs concerning cooking instructions. Plaintiffs had argued that: "Defendant . . . failed to verify that it[s] cooking instructions were adequate to protect consumers." . . . The Court concluded that: "This alleged failure does not establish the first two elements of Plaintiffs' claims as asserted in the Complaint in this case." . . . Plaintiffs' arguments regarding cooking instructions likewise are misguided. Plaintiffs focus on language on the front of the product packaging about the product being "Ready in 4 minutes" in a microwave, but Plaintiffs have never offered any evidence indicating that Karrin Massey cooked the product for 4 minutes in a microwave.

Again, noticeably absent from ConAgra's response brief is any allegation that the Masseys did not adequately plead a failure to warn claim. At the hearing on the motion to reconsider, however, the following exchange took place:

> **Court:** Okay, . . . it goes to the second part of their argument, which is the instruction part. That is, I prepare the product according to instruction, it's got salmonella in it. I'm going to get sick and if I – even if I prepare it according to instructions, I'm still possibly going to get sick. That's the question. Does that make the product defective? Essentially, it's a failure to warn case, a failure to instruct case. Isn't that what we – isn't that what they're arguing and how do you respond to that?
>
> **[Counsel for ConAgra]:** It's not plead[ed] here and it's not my burden to establish that.

This appears to be the only instance in the record where ConAgra had anything to say about whether a failure to warn claim was, or was not, pleaded.

Idaho Rule of Civil Procedure 8(a)(1) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." I.R.C.P. 8(a)(1). This Court has long abandoned any technical rules of pleading. *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986). "The general policy behind the current rules of civil procedure is to provide every litigant with his or her day in court." *Id.* Additionally, "[t]he purpose of a complaint is to inform the defendant of the material facts upon which the plaintiff bases his action." *Id.* To reiterate, "[a] complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief." *Id.* "Failure to warn can be a basis for recovery in a products liability action, whether alleged under a theory of strict liability in tort or negligence." *Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 823, 979 P.2d 1174, 1181 (1999).While

jurisdictional issues and the illegality of a contract may be raised *sua sponte* by a court at any time (*See, Dep't of Health & Welfare v. Doe I*, 147 Idaho 314, 315, 208 P.3d 296, 297 (2009); *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002)), there does not appear to be any case law discussing a district court's ability to dismiss certain claims based on its *sua sponte* determination that the claim in question was not adequately pleaded in the complaint.

While the Masseys' complaint is nothing if not concise, it nonetheless satisfied the barebones standard under Rule 8(a). Because a failure to warn claim is a specific type of products liability action, the inclusion of certain language such as: "[ConAgra] failed to ensure that its cooking instructions would, if followed by the consumer, kill Salmonella and other pathogens" under a general "Products Liability" heading is sufficient for ConAgra to infer that a failure to warn claim was being alleged. And, importantly, ConAgra did make that inference. Thus, the general purpose behind a complaint—to inform the defendant of the plaintiff's allegations—was not circumvented here. ConAgra acknowledged in its response brief in opposition of the Masseys' motion to reconsider that the Masseys had raised the issue of inadequate instructions prior to the district court's ruling on ConAgra's summary judgment motion. ConAgra did, in response to the district court's inquiry at hearing, state that a failure to warn claim was not pleaded, but in doing so appears to have misconstrued the import of paragraph 19 of the complaint and the parties' briefing with respect to that issue. The district court erred in dismissing the Masseys' failure to warn claim based on a failure to plead. Furthermore, the Masseys had no notice that the sufficiency of their complaint was at issue.

## V. CONCLUSION

We vacate the judgment and award costs to the Masseys.

Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.

11