# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44874

| | | |
|---|---|---|
| In the Matter of the DOE CHILDREN, | ) | |
| Children Under Eighteen (18) Years of Age. | ) | |
| -------------------------------------------------------- | ) | |
| JANE DOE I (2017-13), | ) | Boise, July 2017 Term |
| | ) | |
|     Petitioner-Appellant, | ) | 2017 Opinion No. 102 |
| | ) | |
| v. | ) | Filed: September 21, 2017 |
| | ) | |
| JANE DOE II, | ) | Karel A. Lehrman, Clerk |
| | ) | |
|     Respondent. | ) | |
| _____ | ) | |

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, Kootenai County.  Hon. James Combo, Magistrate Judge.

The judgment of the magistrate court is affirmed

James, Vernon & Weeks, P.A., Coeur d'Alene, for appellant. Monica Flood Brennan argued.

Jane Doe II, respondent pro se argued.

_____

BRODY, Justice.

This case involves a petition for co-adoption of two children. The Court addresses the following issues: (1) whether there is a basis for claiming legal error where a magistrate judge expresses a likely outcome of a motion, but does not actually hear the matter or enter an order; (2) whether an order vacating a final judgment is appealable under Idaho Appellate Rule 11(a); and (3) whether a guardian gave sufficient legal consent to an adoption.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe II ("Grandmother") has been raising her two young granddaughters, VG and CG, since they were born. Grandmother met Jane Doe I ("Former Girlfriend") soon after CG's birth. Grandmother and Former Girlfriend were involved in a romantic relationship and moved to Idaho with the girls in July 2010, where they all lived together for several months. Soon after

1

arriving, Grandmother ended the relationship with Former Girlfriend. Former Girlfriend moved out of the home, but continued to care for the girls.

In June 2011, Grandmother became legal guardian of both girls. In March 2013, Grandmother filed a petition to make Former Girlfriend a co-guardian because she thought it would ensure that the girls would remain together if something happened to her. About a year later, Grandmother and Former Girlfriend filed a joint petition to terminate the biological parents' rights and co-adopt the girls.

About a year after the parties' joint petition was filed, their attorney noticed the matter for hearing. A few minutes before the hearing was scheduled to take place, the parties' attorney spoke with Judge Peterson who was assigned to hear the matter. During the conversation, Judge Peterson expressed that he likely would not grant the petition for co-adoption because "the parties aren't married and that they apparently don't have an intention to be together as a couple." Judge Peterson made it clear he was not refusing to hold a hearing. The parties' attorney confirmed that the parties were making the decision to call down the hearing.

After their attorney spoke with Judge Peterson, the lawyer met with Grandmother and Former Girlfriend in the hall to discuss their options. The option agreed upon was for each party to adopt one child while maintaining a guardianship over the other child. The parties then went into the courtroom and, under oath, agreed to the conditions before Judge Wayman, another magistrate judge in the courthouse. The written agreements to adopt that were prepared prior to the hearing were changed to reflect that Former Girlfriend would adopt CG and Grandmother would adopt VG. The parties each signed their own adoption agreement in front of Judge Wayman. During the hearing on the matter, Judge Wayman granted the petition to terminate the biological parents' rights and granted the separate adoptions. No written orders or judgments were entered at that time.

Less than two months after the termination/adoption hearing with Judge Wayman, Grandmother told Former Girlfriend that she would not drop off the girls at Former Girlfriend's home as she had traditionally done under their childcare arrangement unless they were able to agree upon a custody plan. This was apparently due to a new romantic relationship between Former Girlfriend and another woman that had created some tension between the parties. The next day, Judge Wayman entered a written judgment terminating the biological parents' rights and granting Former Girlfriend's adoption of CG. Once that judgment was entered, Former

Girlfriend sent the police to Grandmother's house to remove CG from Grandmother's home. The child was not at home. The police made two other efforts to remove the child from Grandmother which were not successful. Ultimately, Former Girlfriend went to Grandmother's home and physically removed CG.

On August 18, 2015, Former Girlfriend filed a motion in the pre-adoption guardianship case to obtain temporary physical custody of CG and to terminate the guardianship of Grandmother. The record for the pre-adoption guardianship case was not made part of this appeal, but Grandmother testified that the court handling the guardianship proceeding granted Former Girlfriend physical custody of CG around August 20, 2015. Grandmother also testified that the magistrate handling the guardianship proceeding told her that once an adoption is entered a guardianship is automatically terminated. Grandmother testified that she agreed to the termination of the guardianship for each child based on that understanding and because she did not have the resources to challenge the decision.

On September 11, 2015, Grandmother filed a motion to set aside the adoption judgment entered in favor of Former Girlfriend, alleging that Former Girlfriend committed fraud because she had no intention of allowing Grandmother to have continued guardianship over CG. Judge Combo presided over the motion to set aside the judgment. He held an evidentiary hearing on Grandmother's motion in late November 2015. In December 2015, Judge Combo issued a decision from the bench. He vacated both adoptions because the court found clear and convincing evidence of fraud. In January 2016, Former Girlfriend appealed the decision to set aside the adoption to the district court. The district court dismissed the appeal, ruling that there was no final judgment entered by Judge Combo. Former Girlfriend did not appeal the district court's dismissal of the appeal.

In August 2016, Former Girlfriend filed a separate proceeding to have herself appointed as co-guardian of CG. Grandmother also filed a separate proceeding, and the two cases were consolidated. In December 2016, Grandmother was granted sole guardianship of both children. It does not appear that Former Girlfriend appealed that determination nor is that case part of the record on appeal.

In late December 2016, Former Girlfriend filed a motion for summary judgment in this case seeking co-adoption of both girls and orders of guardianship or visitation based on the parties' original petition for co-adoption. In response, Grandmother filed a motion to dismiss the

petition, stating that she no longer wished to have the co-adoption go forward. Judge Combo denied Former Girlfriend's motion for summary judgment because Grandmother (the sole guardian) must give consent to the adoption and Grandmother did not consent. Judge Combo granted Grandmother's motion to dismiss and entered a judgment of dismissal. Former Girlfriend now appeals what she alleges was Judge Peterson's decision to deny the petition for co-adoption, Judge Combo's decision on the motion to set aside the adoption judgments based on fraud, and the judgment of dismissal in favor of Grandmother based on lack of consent to the co-adoption.

## II.    STANDARD OF REVIEW

Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion. Under I.R.C.P. 56(c), summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. This Court must liberally construe . . . the record in favor of the party opposing the motion and draw . . . all reasonable inferences and conclusions in that party's favor. Summary judgment is not appropriate if the evidence is conflicting on material issues, or if reasonable minds could reach different conclusions.

*Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 479, 328 P.3d 456, 459 (2014) (internal quotations and citations omitted).

## III.    ANALYSIS

**1.    There is no basis for a claim of error where Judge Peterson did not rule upon the co-adoption petition.**

Former Girlfriend argues that Judge Peterson erred by rejecting the June 2015 petition for co-adoption. She argues she should have been able to enter into a co-adoption because under Idaho Code section 16-1501 marriage is not a requirement to adopt and therefore, her constitutional rights were violated. The problem with Former Girlfriend's position is that Judge Peterson did not enter an order or make any ruling denying the petition for co-adoption.

Judge Peterson had a verbal exchange with the parties' attorney wherein he expressed his concerns about the proposed co-adoption—not because the ladies were involved in a same-sex relationship—but because they were not involved in any committed relationship. Judge Peterson stated:

The Court's concern is that that the parties aren't married and that they apparently really don't have an intention to be together as a couple. Were they

4

married, I would give full faith and credit to that and I would consider permitting both of them to adopt if the statutory elements were otherwise met. Here though, they are not married and they're not even in a dating relationship at this time, and frankly, the same-sex issue is to me a red herring. This court in its discretion would not permit boyfriend/girlfriend even in the dating relationship to adopt. One of them could adopt, but there is just no permanence or structure without that committed union there, and it would leave the child in limbo if the guardianship ended, and it's just a very troubling situation from a rights and custody standpoint, so having had that discussion with [counsel] he indicated that he was going to call down today's hearing.

He goes on to further clarify:

And [counsel], also just for the record, I think we discussed the Court [is] not prohibiting you from having a hearing. We had a discussion. I indicated how the Court would likely exercise its discretion, and it's your request to call down this hearing. I don't want the record to suggest that the Court is prohibiting you from having a hearing.

To which counsel responded:

I understood that, Judge, and my clients have consented under the circumstances to call down the hearing pending further reflection on their part whether or not they want to go forward with their relationship from a marital standpoint or if they wish to just pursue so that one of them adopts. It does not prohibit one of them to still maintain the status as guardian.

Idaho Appellate Rule 11(a) sets out what decisions are reviewable in civil actions. It listed the following in June 2015 when Judge Peterson had his conversation with the parties' attorney:

(1) Final judgments, as defined in Rule 54(a) of the Idaho Rules of Civil Procedure, including judgments of the district court granting or denying peremptory writs of mandate and prohibition.
(2) Decisions by the district court dismissing, affirming, reversing or remanding an appeal.
(3) Judgments made pursuant to a partial judgment certified by the trial court to be final as provided by Rule 54(b), I.R.C.P.
(4) Any order or judgment of contempt.
(5) An order granting or refusing a new trial, including such orders which contain a conditional grant or denial of a new trial subject to additur and remittitur.
(6) An order granting or denying a motion for judgment notwithstanding the verdict.
(7) Any order made after final judgment including an order denying a motion to set aside a default judgment, but excluding an order granting a motion to set aside a default judgment.

(8) Any order appealable under the Uniform Arbitration Act, Title Seven, Chapter 9 of the Idaho Code.

(9) A district court order designating a person a vexatious litigant pursuant to Idaho Court Administrative Rule 59, in which case the notice of appeal may be filed with either the district court clerk or the Clerk of the Supreme Court.

Idaho Rule of Civil Procedure 54(a) in June 2015 defined "judgment" as:

". . . "Judgment" as used in these rules means a separate document entitled "Judgment" or "Decree". A judgment shall state the relief to which a party is entitled on one or more claims for relief in the action. Such relief can include dismissal with or without prejudice. . . . A judgment or partial judgment must begin with the words "JUDGMENT IS ENTERED AS FOLLOWS: . . ," and it shall not contain any other wording between those words and the caption.

In order for this Court to exercise its power of judicial review, there must be an actual decision by the trial court. Judge Peterson expressed his concerns to the parties' attorney about the petition for co-adoption, but he did not actually hear the matter or enter any type of order or judgment which is reviewable under Idaho Appellate Rule 11(a). Instead of moving forward with a hearing, the parties, with the advice of their attorney, elected to cancel the hearing and proceed with two separate adoptions. That was their choice. Because Judge Peterson did not enter an order or judgment for this Court to review, there is no basis for a claim of error on appeal.

**2.      Former Girlfriend failed to timely appeal Judge Combo's decision to vacate the adoption judgment.**

Former Girlfriend claims that Judge Combo erred when he vacated the adoption judgment for CG because there was not clear and convincing evidence of fraud. This Court does not have jurisdiction to hear this issue because it was not timely appealed to this Court.

Judge Combo entered an order vacating the adoption judgments for both girls on December 10, 2015. Former Girlfriend timely appealed Judge Combo's decision to the district court on January 14, 2016. The district court dismissed the appeal on January 22, 2016, ruling that there was no final judgment from which to appeal. Former Girlfriend did not appeal the district court's decision to dismiss the appeal.

To determine whether Former Girlfriend's appeal is timely, it is important to recognize that Judge Combo made two separate decisions—the decision to vacate the adoption judgment and the subsequent decision to dismiss the petition for co-adoption based on Grandmother's refusal to consent. These two decisions give rise to two different appeal rights.

6

Idaho Rule of Civil Procedure 83(a) sets forth the scope of appeals from decisions of magistrates. The rule at the time of Judge Combo's decision to set aside the adoption judgment stated in relevant part:

> An appeal from any final judgment, as defined in Rule 54(a) of the Idaho Rules of Civil Procedure, granting or denying a petition for termination of parental rights or granting or denying a petition for adoption must be taken to the Idaho Supreme Court in accord with Idaho Appellate Rule 11.1. *Otherwise, absent an order allowing a permissive appeal pursuant to Idaho Appellate Rule 12.1, an appeal must first be taken to the district judges division of the district court from any of the following judgments or orders rendered by a magistrate:*
>   (1) A final judgment in a civil action or a special proceeding commenced, or assigned to, the magistrate's division of the district court.
>   *(2) Any of the judgments or orders in an action in the magistrate's division which would be appealable from the district court to the Supreme Court under Rule 11 of the Idaho Appellate Rules.*

Idaho Rules of Civil Procedure 83(a) (emphasis added). Idaho Appellate Rule 11 expressly stated that "any order made after final judgment" gave rise to an appeal as a matter of right. Idaho Appellate Rule 11(a)(7).

Former Girlfriend recognized that she did not have the right to appeal Judge Combo's decision to vacate the adoption judgment directly to this Court because it was not a final judgment denying a petition for adoption as required by the first sentence of Idaho Rule of Civil Procedure 83(a). Instead, she recognized that her appeal of Judge Combo's decision had to be filed with the district court. The appeal was proper under Idaho Appellate Rule 11(a)(7) because Judge Combo's decision to vacate the adoption judgment was an order made after final judgment. The district court's decision to dismiss the appeal because of a lack of finality was erroneous and appealable to this Court under Idaho Appellate Rule 11(a)(2), which provided for an appeal as a matter of right of "decisions by the district court dismissing, affirming, reversing or remanding an appeal." The district court's decision to dismiss Former Girlfriend's appeal was entered on January 22, 2016. Under Idaho Appellate Rule 14, Former Girlfriend had 42 days from that date to appeal the district court's decision. No appeal was taken, and we do not have jurisdiction to review Judge Combo's order vacating the adoption judgment.

There are harsh consequences for the failure to timely appeal. We have long held that the "failure to comply with time restrictions is jurisdictional 'and shall cause automatic dismissal of such appeal.'" *Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 58–59, 205 P.3d 1192, 1194–95 (2009); *see also* I.A.R. 21. The Court recognizes that there has been much

focus on the issue of finality of judgments in recent years, but it is important for litigants to recognize that the scope of appellate review set forth in Idaho Appellate Rule 11 is broader than just final judgments.

**3.    Judge Combo did not err when he dismissed the petition for co-adoption based on the failure of written consent.**

After the district court dismissed Former Girlfriend's appeal of Judge Combo's decision to vacate the adoption judgment, Former Girlfriend filed a motion for summary judgment seeking to enforce the parties' original petition for co-adoption. Grandmother objected to the motion for summary judgment and filed a motion to dismiss the joint petition. Judge Combo granted Grandmother's motion to dismiss because Grandmother did not consent to the co-adoption. Former Girlfriend contends that Grandmother consented to the co-adoption when she filed the joint petition and when she signed an adoption agreement in front of Judge Wayman. Former Girlfriend contends that Grandmother cannot revoke consent based on this Court's decision in *Petition of Steve B.D.*, 111 Idaho 285, 723 P.2d 829 (1986). We affirm the district court's dismissal of the petition for co-adoption.

Idaho Code section 16-1504(f) requires that a legally appointed custodian or guardian consent to an adoption if there is no other parent. That consent must be in writing under Idaho Code section 16-1506(2) and in a form substantially consistent with the provisions of Idaho Code section 16-2005(4). Among other requirements, Idaho Code section 16-2005(4) requires the signing of the consent document to be witnessed by a district judge, magistrate of a district court or equivalent judicial officer.

Given our decision in *Steve B.D.*, where we held that once a parent or guardian gives consent for a specified individual to adopt a child, that consent cannot be revoked and becomes permanent, we require strict compliance with the requirements of Idaho Code sections 16-1506(2) and 16-2005(4). The petition for co-adoption filed by the parties in 2014 was not sufficient written consent for the adoption. It was merely a petition and did not contain the type of language set forth in Section 16-2005(4), and it was not signed in the presence of a judge.

Former Girlfriend also argues that Grandmother consented to the adoption when she signed an adoption agreement witnessed by Judge Wayman on June 11, 2015. The adoption agreement signed by Grandmother stated:

> COME NOW, the Petitioner, [Grandmother], at the time set for hearing of their petition for Adoption of the above-named minor child, [VG], and do hereby

> execute this written agreement that the said minor child shall be adopted by her and treated in all respects as their own lawful child should be treated.

This adoption agreement did not comply with the requirements of section 16-2005(4). This adoption agreement does not contain any expression of Grandmother's consent to Former Girlfriend's adoption of CG. In fact, it does not pertain to CG or Former Girlfriend at all. Because Grandmother did not consent in writing to Former Girlfriend's adoption of either girl, Judge Combo properly dismissed the petition for co-adoption.

## IV. CONCLUSION

The statements made by Judge Peterson are not reviewable because they do not constitute a final decision or judgment, therefore that issue is not properly before this Court. Additionally, this Court does not have jurisdiction to decide whether Judge Combo's order vacating the adoption judgment based on fraud was in error because Former Girlfriend's appeal was not timely. Lastly, Judge Combo did not err when he dismissed the petition for co-adoption because Grandmother did not give legally sufficient written consent. We award costs on appeal to Grandmother.

Chief Justice BURDICK and Justices EISMANN, W. JONES, and HORTON CONCUR.